# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW CLOUGH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BROCK SERVICES, LLC, )<br>)<br>Defendant. ) | 2:19-cv-00050-JAW |

## ORDER ON MOTION TO COMPEL ARBITRATION

A former employer moves to compel arbitration in regard to a former employee's lawsuit asserting claims under the Maine Whistleblowers' Protection Act and the Maine Human Rights Act. At issue is whether the parties' prior arbitration agreement was superseded by a subsequent employment agreement. Concluding the parties delegated the resolution of this gateway issue to the arbitrator and that the defendant has not waived its right to compel arbitration, the Court grants the motion to compel arbitration but stays this case pending the results of the arbitration.

## I. BACKGROUND

### A. Procedural History

On January 29, 2019, Matthew Clough filed a complaint against Brock Services, LLC (Brock Services) asserting claims of retaliation under the Maine Whistleblowers' Protection Act (MWPA), 26 M.R.S. §§ 833 *et seq.*, and the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4633 *et seq. Compl.* (ECF No. 1). On March 29, 2019, Brock Services filed a motion to compel arbitration. *Def.'s Mot. to Compel*

*Arbitration* (ECF No. 12) (*Def's Mot.*). On April 1, 2019, Mr. Clough filed a response in opposition to Brock Services' motion to compel arbitration. *Pl.'s Opp'n to Mot. Compel Arbitration* (ECF No. 14). On April 15, 2019, Brock Services filed its reply. *Def.'s Reply in Support of its Mot. to Compel Arbitration* (ECF No. 15) (*Def.'s Reply*).

On April 23, 2019, Mr. Clough filed a motion requesting the Court hold oral argument on Brock Services' motion to compel arbitration, which the Court granted on April 24, 2019. *Mot. for Oral Argument* (ECF No. 16); *Order* (ECF No. 17). On July 26, 2019, the Court held oral argument in this case along with a parallel case, *Moss v. Brock Services*, 2:19-cv-00084-JAW. *Min. Entry* (ECF No. 21).

B.  **Factual Background**[1]

Matthew Clough is a resident of Portland, Maine. *Compl.* ¶ 1. Brock Services is a Texas limited liability company and is a subsidiary of the Brock Group, which is a Texas corporation. *Id.* ¶ 2. Brock Services has a branch located in Gorham, Maine. *Id.* Brock Services "provides industrial services, including soft craft services, labor support, and materials for capital projects, maintenance, and facility turnarounds in a variety of industries . . . ." *Def.'s Mot.*, Attach. 1, *Aff. of Amy Beck*, ¶ 6 (ECF No. 12-1) (*Beck Aff.*).[2]

---

[1] In deciding a motion to compel arbitration, the Court may consider facts alleged in the complaint as well as the arbitration agreement documents the parties submitted in connection with the motion. *See Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 203 n.2 (1st Cir. 2019); *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011) (a motion to compel arbitration is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and is not controlled by Federal Rules of Civil Procedure 12(b)(6) or 12(c)).

[2] The numbering for the attachments submitted with Brock Services' motion differs from the ECF attachment numbering; the Court refers to the ECF attachment numbering.

In 2011, Mr. Clough was hired by Brock Services as a safety coordinator. *Compl.* ¶ 6; *Beck Aff.* ¶ 3. Mr. Clough "met or exceeded performance expectations, earned pay raises, and was promoted several times, most recently to Operations Manager in 2014." *Compl.* ¶ 7. As part of Mr. Clough's onboarding process with Brock Services, "he was apprised of the Dispute Resolution Policy and as a condition of his employment, [which] he signed . . . on August 10, 2011." *Beck Aff.* ¶ 4. In relevant part, the Dispute Resolution Policy states:

> Each, every, any and all claims, disputes and/or controversies now existing or later arising between or among the Parties, or between or among the employees of The Brock Group and any other person or entity constituting the Company or a Company Customer, whether now known or unknown, <u>arising out of or related to employment or termination of employment with The Brock Group shall be resolved only through final and binding arbitration</u>, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and not by way of court or jury trial. <u>Such claims, disputes, and/or controversies, without limitation, include those arising out of or relating to: all issues of arbitrability, including but not limited to unconscionability and all grounds as may exist at law or in equity for the revocation of any contract, the interpretation or application of this Dispute Resolution Policy</u> . . ..

*Def.'s Mot.,* Attach. 2, *Dispute Resolution Policy*, ¶ 1 (ECF No. 12-2) (*Arbitration Agreement*) (emphasis added). The Arbitration Agreement further provides:

> <u>All Disputes shall be exclusively resolved by final and binding arbitration exclusively conducted under the JAMS Employment Arbitration Rules and Procedures (the "Arbitration Rules") in effect at the time of the arbitration demand</u>; provided however, any party may require, by written notice, that non-binding mediation be conducted in parallel with the arbitration demand process . . ..

*Id.* ¶ 3 (emphasis added).

Mr. Clough acknowledged receipt of the Brock Group's employee handbook on August 11, 2011. *Def.'s Mot.*, Attach. 4, *Conditional Offer of Employment* (ECF 12-4)

3

(*Acknowledgement of Receipt of Employee Handbook*); *Def.'s Mot.*, Attach. 3, *Employee Handbook*, at 5 (ECF No. 12-3). Section 8.02 of the Employee Handbook states:

> All employees of the Company shall be subject to the Company's Dispute Resolution Policy for resolution of all matters relating to the employee's employment with the Company. This Dispute Resolution Policy shall be mutually binding on the Company and the employee and is a distinct and separate agreement from all other modifiable Company policy provisions. The employee acknowledges that the terms and conditions of the Dispute Resolution Policy has been provided to the employee as a separate document either through notice or as part of the employee's hiring package. In addition, the employee may request a copy of this policy at any time by contacting the Human Resources Department.
>
> The Dispute Resolution Policy is a binding agreement and acceptance and/or continuation of employment with the Company constitutes knowing and voluntary acceptance and agreement to the terms and condition of the Dispute Resolution Policy. The Company hereby advises the employee to consult with legal counsel regarding the consequences of the Company's Dispute Resolution Policy. The Dispute Resolution Policy does not in any way alter the "at-will" status of the employment relationship.

*Employee Handbook* § 8.02 (emphasis added).

On August 24, 2011, Mr. Clough signed an "Agreement for Full-time Administrative Employee" with Brock Services. *Pl.'s Opp'n*, Attach. 2, *Agreement for Full Time Administrative Employees*, at 1 (ECF No. 14-2) (*Employment Agreement*). The Employee Agreement does not contain an arbitration clause. *See Employment Agreement* at 1-6. In paragraph fourteen, the Employment Agreement states:

> 14. Miscellaneous. This Agreement constitutes the entire agreement of the parties, and no amendments or additions to the Agreement shall be binding unless in writing and signed by both parties. It is expressly understood and agreed that no oral representation, promise or condition, whether made before or after the signing of this Agreement, shall be binding upon any of the parties hereto. This Agreement cancels and supersedes any prior oral or written agreement between the parties

<u>pertaining to the subject matter hereof.</u> This Agreement shall be governed in all respects by the laws of the State of Maine.

*Employment Agreement* ¶ 14 (emphases added).

Mr. Clough made various complaints and reports to Brock Services from June 2016 to October 2017. *Compl.* ¶ 8. Mr. Clough complained or reported the following:

a) Reports of wage and hour violations (failure to pay employees for work-related travel costs) – first reported in June or July of 2016 and again in September and October 2017;

b) Reports to Human Resources about Brock's violations of the FMLA and Maine's drug-screening laws regarding a subordinate employee "RC" – reported in September and October 2017;

c) Reports that Brock was not in compliance with state or federal transportation laws or rules (failure to maintain logs, no annual driver tests, failure to keep DOT records) – reported several times but most recently in September and October 2017;

d) Reports that Brock was not in compliance with OSHA regulations (i.e., failure to maintain records, failure to properly inspect equipment, unsafe equipment on job sites) – reported in September and October 2017; and

e) Participation in an internal investigation conducted by Brock HR and outside counsel in response to allegations of race discrimination asserted by a subordinate employee "AM", and in which he expressed his belief that Brock in fact engaged in race discrimination – in September and October 2017.

*Id.* Brock Services terminated Mr. Clough on November 1, 2017. *Id.* ¶ 9; *Beck Aff.* ¶ 3. Mr. Clough filed a charge of discrimination with the Maine Human Rights Commission (MHRC) and obtained a Notice of Right to Sue. *Compl.* ¶ 5.

## II. POSITIONS OF THE PARTIES

### A. Brock Services' Motion

Brock Services asserts that Mr. Clough expressly agreed at the beginning of his employment that any dispute he had with Brock Services would be submitted to arbitration. *Def's Mot.* at 1. Brock Services argues its agreement to arbitrate with Mr. Clough is unambiguous and expressly encompasses his asserted claims. *Id.* Brock Services says Mr. Clough acknowledged his agreement to arbitrate as part of his employment and that "he continued his employment with Brock until November 1, 2017, with full knowledge that agreement to the Dispute Resolution Policy was a pre-condition to, and an ongoing condition of, his employment . . .." *Id.* at 4.

Brock Services contends that Mr. Clough's claims clearly fall within the Arbitration Agreement's scope as the agreement encompasses "[e]ach, every, any and all claims, disputes and/or controversies now existing or later arising between or among the Parties . . . arising out of or related to employment . . . . Such claims, disputes, and/or controversies, without limitation, include those arising out of or relating to [the] employment relationship . . . and all other federal, state, or other statutory and common law claims including retaliation claims . . .." *Id.* at 6 (citing *Arbitration Agreement* ¶ 1) (alterations in original and emphasis omitted). Brock Services claims that the United States Supreme Court "has made it clear that arbitration agreements committing allegations of employment claims to arbitration are properly enforced under the FAA, specifically including claims based on state and federal human rights laws." *Id.* (citations omitted).

Brock Services argues its arbitration agreement with Mr. Clough exists and is enforceable under Maine law, as Mr. Clough signed the Dispute Resolution

6

Agreement, which states "[t]his Dispute Resolution Policy is a mutually binding agreement between [Brock] and all employees. It is distinct, separate and different from any other modifiable company policy provisions. The Dispute Resolution Policy may not be changed or modified by [Brock], except with the acceptance of the employee after 60 days notice." *Id.* at 7.

Lastly, Brock Services says it did not waive its right to compel arbitration via its participation in the Maine Human Rights Commission investigation because "an employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings." *Id.* at 8 (quoting *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 15-16 (1st Cir. 2005)).

Brock Services concludes that because all Mr. Clough's claims are arbitrable, the Court should dismiss this lawsuit. *Id.* at 9.

### B. Matthew Clough's Opposition

Mr. Clough responds that there is no agreement to arbitrate because he and Brock Services entered a superseding and fully integrated Employment Agreement which did not mention submitting claims to arbitration and thus, the original Arbitration Agreement was invalidated. *Pl.'s Opp'n* at 1. According to Mr. Clough, there is no valid agreement to arbitrate under Maine law because "there is no evidence that the parties intended to be bound by any aspect of August 10, 2011 DRP and every indication that the parties intended the Employment Agreement as a complete and final expression of their intent to control all aspects of their employment

7

relationship." *Id.* at 4. Mr. Clough says the superseding Employment Agreement expresses "the clear intent of the parties to void and supersede the [Dispute Resolution Policy] and any other prior oral or written agreement." *Id.* (citation omitted).

In support of his argument, Mr. Clough cites *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014) and contends that the Court of Appeals for the Eleventh Circuit explained "that the FAA's 'presumption of arbitrability' is invalid when parties to an earlier, valid contract choose to supersede that agreement in writing." *Id.* at 5 (citing *Dasher*, 745 F.3d at 1115-16). Similarly, in *Applied Energetics, Inc. v. Newoak Capital Markets, LLC*, 645 F.3d 522 (2d Cir. 2011), Mr. Clough says the Court of Appeals for the Second Circuit vacated a district court's order granting a defendant's motion to compel arbitration where the parties' original agreement was superseded by a subsequent agreement. *Id.* (citing *Applied Energetics*, 645 F.3d at 524-25). Mr. Clough contends that in light of these cases, and because the parties' subsequent agreement is silent on arbitration and includes an integration clause, Brock Services cannot enforce the prior Arbitration Agreement. *Id.* at 6. Mr. Clough further argues that because the subsequent Employment Agreement is unambiguous and fully integrated, no extrinsic evidence may be considered to interpret it. *Id.* at 7.

### C. Brock Services' Reply

Brock Services replies that Mr. Clough conceded the first two requirements needed to compel arbitration are met and the sole remaining issue is whether Brock Services has waived or otherwise nullified its Arbitration Agreement with Mr. Clough

8

by the subsequent Employment Agreement. *Def.'s Reply* at 1-2. Brock Services disputes Mr. Clough's assertion that the Employment Agreement nullified the Arbitration Agreement, as he ignored "the limited scope of the Employment Agreement's integration clause and fail to take into account the strong presumption favoring arbitrability[]" in doing so. *Id.* at 2.

Brock Services argues "[t]he integration clause of the Employment Agreement expressly limited its application to the terms and conditions set forth in the Employment Agreement: '[t]his Agreement cancels and supersedes any prior oral or written agreement between the parties pertaining to the subject matter hereof.'" *Id.* (citing *Employment Agreement*) (emphasis omitted). According to Brock Services, this means this agreement is complete and final as to employees' "compensation, benefits, holidays, paid time off, discharge rights, and the other subject matters contained in the Employment Agreement." *Id.* Because the agreement does include an arbitration clause and/or a forum selection clause, Brock Services says the parties' previous Arbitration Agreement is not canceled or superseded by the Employment Agreement. *Id.*

Brock Services dismisses Mr. Clough's use of *Applied Energetics* and *Dasher* and argues the reasoning of both cases applies "when the parties to an agreement enter into a second, completely integrated agreement that fully defines their contractual relationship[,]" which did not occur in the Employment Agreement between Brock Services and Mr. Clough. *Id.* at 3. As Brock Services sees it, "at the outset of the employment relationship, the parties entered into a distinct, stand-alone

9

agreement to arbitrate any dispute that may arise between them and then two weeks later entered into an Employment Agreement that did not alter, modify, or supplant the parties' existing stand-alone arbitration agreement." *Id.*

Brock Services argues the Employment Agreement's integration clause is more like the partial integration clauses in *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005) and *Sher v. Goldman Sachs*, Civil No. CCB–11–2796, 2012 WL 1377066, 2012 U.S. Dist. LEXIS 56596 (D. Md. Apr. 19, 2012). *Id.* at 4. Brock Services avers that a finding that the Employment Agreement entered on August 24, 2011 supersedes the Arbitration Agreement entered on August 10, 2011 will lead to an absurd result as it would mean,

> [T]he parties intended the arbitration agreement to remain in effect for a mere two weeks, despite the fact that the arbitration agreement and the Employee Handbook expressly state that it "is distinct, separate and different from any other modifiable company policy provision" and that "[b]y accepting or continuing employment with The Brock Group, you [referring to Plaintiff] acknowledge that you knowingly and voluntarily accept this Dispute Resolution Policy."

*Id.* at 5 (citations omitted).

Lastly, Brock Services argues that the parties did not expressly negate their previous Arbitration Agreement. *Id.* Brock Services claims that to override the presumption favoring arbitration, there must be some express or clear implication by the parties to do so. *Id.* (citations omitted). In turn, Brock Services says the parties took no such actions and Mr. Clough "has offered no affirmative evidence to overcome the presumption that the arbitration agreement continued in full force and effect." *Id.* at 7.

10

## III. LEGAL STANDARD

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The FAA embodies a "liberal federal policy favoring arbitration agreements." *Foss v. Circuit City Stores, Inc.*, 477 F. Supp. 2d 230, 232-33 (D. Me. 2007) (citations omitted). In deciding whether to compel arbitration, a court must determine whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (quoting *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)).

In deciding whether to compel arbitration, courts look to state law principles that govern the formation of contracts, including validity, enforceability, and revocability of contracts. *Bezio v. Draeger*, 737 F.3d 819, 822–23 (1st Cir. 2013) (citation omitted). "[C]ourts judge the existence (or not) of an agreement to arbitrate by normal state-law contract principles." *Britto v. Prospect Chartercare SJHSRI, LLC*, 909 F.3d 506, 512 (1st Cir. 2018) (citation omitted). Both parties utilize Maine contract law and the Court agrees this is appropriate. *See Genereux v. Raytheon Co.*, 754 F.3d 51, 54 (1st Cir. 2014). Under Maine law:

> A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in

11

> the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party.

*Sullivan v. Porter*, 861 A.2d 625, ¶ 13, 861 A.2d 625. "A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them." *Maine Mortg. Co. v. Tonge*, 448 A.2d 899, 902 (Me. 1982) (citing *Interstate Indus. Uniform Rental Serv., Inc. v. F. R. Lepage Bakery, Inc., Me.*, 413 A.2d 516, 519 (1980); 3 A. CORBIN, CONTRACTS § 573 (1960 & Supp. 1980)); *see also Loe v. Town of Thomaston*, 600 A.2d 1090, 1092 (Me. 1991) ("Under the parol evidence rule a binding partially integrated agreement discharges prior agreements to the extent that it is inconsistent with them").

### IV. DISCUSSION

Contrary to Brock Services' argument, Mr. Clough's opposition memorandum does not concede that there is a valid arbitration agreement and that his claims fall within the scope of the arbitration agreement. *Def.'s Reply* at 1. Mr. Clough acknowledges that he signed the Arbitration Agreement on August 10, 2011, and it requires "any disputes relating to his employment or termination of employment" be submitted to arbitration, but his principal contention is that he does not have to submit his claims to arbitration because his subsequent Employment Agreement invalidates the Arbitration Agreement. *Pl.'s Opp'n* at 1-4. Accordingly, the Court must determine whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party

12

seeking an arbitral forum has not waived its right to arbitration." *Gove*, 689 F.3d at 4.

### A. Existence of a Valid Arbitration Agreement

The Court's first task is to ascertain whether a valid arbitration agreement exists. *FPE Found. v. Cohen*, 801 F.3d 25, 29 (1st Cir. 2015). The presumption in favor of arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301-02 (2010); *Paquette v. McDermott Inv. Servs., LLC*, No. CIV. 14-12377-FDS, 2014 WL 5313945, at *5 (D. Mass. Oct. 17, 2014) (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

Mr. Clough argues there is no valid agreement to arbitrate and thus, Brock Services cannot compel arbitration because the Employment Agreement—which contains no arbitration provision but includes an integration clause—superseded the Arbitration Agreement and the Court may not consider the prior Arbitration Agreement to determine the level of integration because the Employment Agreement is unambiguous. *See Pl.'s Opp'n* at 1-8. Brock Services counters that the Employment Agreement, which it says is only partially integrated, is limited to the terms of that agreement and thus, does not supersede the parties' prior Arbitration Agreement and that the parties did not expressly negate the Arbitration Agreement through the Employment Agreement. *See Def.'s Reply* at 1-6.

The first question, and the one that resolves this motion, is who decides whether the claims are arbitrable. The Court must determine if the Arbitration

13

Agreement delegates the authority to determine if the Arbitration Agreement has been superseded to the arbitrator rather than the Court. Analyzing the language of the Arbitration Agreement, the Court concludes whether the Arbitration Agreement has been superseded by the Employment Agreement is for an arbitrator, not this Court, to determine given the Arbitration Agreement's broad and clear directive.

1. **Delegation**

Before reaching the merits of a dispute, courts may be called upon to resolve certain "gateway disputes" about the arbitrability of certain matters "unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted); *Fantastic Sams Franchise Corp. v. FSRO Ass'n LTD*, 683 F.3d 18, 24-25 (1st Cir. 2012). "For such gateway questions, a court 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Patton v. Johnson*, 915 F.3d 827, 835 (1st Cir. 2019) (citation omitted). Whether there is "clear and unmistakable" evidence depends on the "parties' manifestation of intent" *Rent-A-Center West, Inc., v. Jackson*, 561 U.S. 63, 69 n.1 (2010). "Parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68-69 (internal quotation marks omitted). Often this is accomplished by delegation provision which serves as an agreement between the parties delegating certain threshold issues to arbitration. *Danley v. Encore Capital Grp., Inc.*, 680 Fed. App'x. 394, 395-96 (6th Cir. 2017) (citation omitted).

A challenge to the entire contract or to another provision within the contract "does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70. The severability rule—originally announced in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)—is applicable to delegation clauses. *Rent-A-Center*, 561 U.S. at 70. As a result, unless specifically challenged, a delegation provision operates as "an additional, antecedent agreement" under the FAA. *Id.* Accordingly, if the Court determines that the parties evidenced a clear and unmistakable intent to submit certain gateway issues to the arbitrator such as whether the Arbitration Agreement is valid, the Court must enforce the parties' intent. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The Arbitration Agreement provides in relevant part:

> <u>Each, every, any and all claims, disputes and/or controversies now existing or later arising between or among the Parties</u>, or between or among the employees of The Brock Group . . . whether now known or unknown, arising out of or related to employment or termination of employment with The Brock Group <u>shall be resolved only through final and binding arbitration</u> . . . . <u>Such claims, disputes, and/or controversies, without limitation, include those arising out of or relating to: all issues of arbitrability, including but not limited to unconscionability and all grounds as may exist at law or in equity for the revocation of any contract, the interpretation or application of this Dispute Resolution Policy</u> . . ..

*Arbitration Agreement* ¶ 1. By its terms "all issues of arbitrability, including but not limited to unconscionability and all grounds as may exist at law or in equity for the revocation of any contract, the interpretation or application of this Dispute Resolution Policy" are to be resolved by arbitration. *Id.* The Arbitration Agreement also states

15

that "[a]ll disputes shall be exclusively resolved by final and binding arbitration exclusively conducted under the JAMS Employment Arbitration Rules and Procedures . . . in effect at the time of the arbitration demand." *Id.* ¶ 3.

Mr. Clough's argument pertains to the Arbitration Agreement as a whole, and he does not assert that the Arbitration Agreement was never executed, rather that it has been superseded and is therefore no longer valid because of the Employment Agreement. Thus, this delegation clause is "an additional, antecedent agreement" under the FAA. *Rent-A-Center*, 561 U.S. at 70. The term arbitrability refers to "questions about whether the parties have agreed to submit a given dispute to arbitration." *Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc.*, 680 F.3d 118, 122 (1st Cir. 2012). In *Rent-A-Center*, the United States Supreme Court concluded that the parties' delegation provision—which provided "any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including . . . any claim that all or any part of this Agreement is void or voidable" should be submitted to arbitration—gave an arbitrator, and not the court, the authority to determine whether the arbitration agreement was enforceable. 561 U.S. at 66, 72. Here, the Arbitration Agreement commits to the arbitrator's authority resolution of any issue as to the revocation of any contract, the application and interpretation of the Arbitration Agreement, and all issues concerning arbitrability. In light of this direct and broad language, the Court concludes that the parties delegated to the arbitrator the question of whether the Employment Agreement superseded the Arbitration Agreement.

This conclusion is reinforced by the Arbitration Agreement's reference of the JAMS Employment Arbitration Rules and Procedures. *Arbitration Agreement* ¶ 3. Pursuant to Rule 11(b), the arbitrator shall rule on "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought", and "determine jurisdiction and arbitrability issues . . . ." JAMS Employment Arbitration Rules and Procedures, Rule 11(b), https://www.jamsadr.com/files/Uploads/Documents/JAMSRules/JAMS_employment_arbitration_rules-2014.pdf. Courts have consistently found that incorporation of arbitration rules is evidence of the parties' clear and unmistakable intent to delegate to the arbitrator the authority to determine questions of arbitrability and jurisdiction. *See Awuah v. Coverall North America, Inc.*, 554 F.3d 7, 11-12 (1st Cir. 2012); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989); *Tannat v. Varonis Syss., Inc.*, No. 18-12589-JGD, 2019 WL 830482, at *5 (D. Mass. Feb. 21, 2019).

The Court concludes the parties delegated the issue of whether the Arbitration Agreement remains valid in light of the Employment Agreement to arbitration, and because this delegation provision operates as an additional, antecedent agreement, the Court must enforce it.

### B. Scope and Waiver

Mr. Clough says "[b]ecause there is no valid agreement to arbitrate, there is no need to determine whether Plaintiff's claims fall within the scope of the DRP or whether Defendant waived all rights to enforce the invalid arbitration provisions."

*Pl.'s Opp'n* at 8. In light of the Court's conclusion that the parties have delegated to the arbitrator the issue of the Arbitration Agreement's validity, it is necessary to consider whether Mr. Clough's allegations fall within the scope of the Arbitration Agreement and if Brock Services waived its right to compel arbitration.

The Arbitration Agreement's scope is broad and extensive as it applies to every claim "now existing or later arising between or among the Parties . . . arising out of or related to employment or termination of employment," whether such claims are known or unknown. *Arbitration Agreement* ¶ 1. In reviewing Mr. Clough's claims for retaliation under the MWPA and the MHRA, the Court concludes they fall within the Arbitration Agreement's purview. Moreover, Brock Services has not waived its right to compel arbitration as it moved to compel arbitration in a reasonably prompt fashion in this lawsuit. *Marie*, 402 F.3d at 17.

### C. Stay or Dismissal

The remaining issue is whether the Court should dismiss or stay the action. The Court has discretion to stay or dismiss when all the issues before it are arbitrable. *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 n.21 (1st Cir. 1998). Although there are advantages to dismissal when all the issues are arbitrable, *Boulet v. Bangor Sec., Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004), the Court concludes a stay is appropriate in light of the fact that the Court is staying for reasons of the statute of limitations in the companion case, *Moss v. Brock Services*, 2:19-cv-00084-JAW. It makes sense for the Court to address these two cases, which are similar, in the same fashion to avoid inconsistent decisions. Even so, the Court does not want to lose track

of this case and its companion and hereby ORDERS the parties to file with the Court a status report on their progress with arbitration within ninety days of the date of this order and every ninety days thereafter until the arbitration is over.

V.  **CONCLUSION**

The Court GRANTS Brock Services' Motion to Compel Arbitration (ECF No. 12).[3] The Court STAYS this action pending the outcome of arbitration and ORDERS counsel to prepare and file a joint status report by November 12, 2019 and every ninety days thereafter until the arbitration is resolved.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of August, 2019

---

[3] By granting the motion to compel arbitration the Court is expressing no view as to whether an arbitrator should or should not conclude that the claims are arbitrable.